UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

MARC NORFLEET,

    Plaintiff,

v.

ROGER E. WALKER, JR.,
*Director of IDOC*, *et al.*,

    Defendants.

Case No. 09-cv-347-JPG-PMF

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Magistrate Judge Philip M. Frazier's Report and Recommendation ("R & R") (Doc. 79) of January 7, 2011, which suggests the Court deny Plaintiff Marc Norfleet's ("Norfleet") Motion for Preliminary Injunction (Doc. 59) and Petition for 90-Day Emergency Preliminary Injunction (Doc. 61). Norfleet filed an Objection (Doc. 83) thereto, to which Defendants did not file a response.

For the following reasons, the Court, *inter alia*, **REJECTS** the R & R and **ORDERS** the parties appear for a hearing on the underlying motions on Wednesday, March 30, 2011, at 1:30 p.m.

### **STANDARD OF REVIEW**

After reviewing a report and recommendation, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge in the report. Fed. R. Civ. P. 72(b). The Court must review *de novo* the portions of the report to which objections are made. The Court has discretion to conduct a new hearing and may consider the record before the magistrate judge anew or receive any further evidence deemed necessary. *Id.* "If no objection or

1

only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Here, Norfleet has objected to nearly all of the R & R. As such, the R & R shall be placed under the *de novo* lens of review.

## BACKGROUND[1]

The crux of the underlying claim is that Norfleet has not been allowed to engage in meaningful and beneficial exercise as required by Title II of the Americans with Disabilities Act of 1990 ("ADA"). Norfleet, who is confined to a wheelchair, makes a number of specific allegations to illustrate this point. While non-disabled inmates may participate in five to seven hours of exercise per week, the "ADA recreation schedule" applicable to Norfleet allows for one "if lucky" hour of exercise per week that is often canceled. Disabled inmates at Lawrence Correctional Center, where Norfleet is currently incarcerated, are not provided with any meaningful ADA-certified recreational equipment other than a basketball. Meanwhile, the prison provides non-disabled inmates with a universal weight machine, pull-up and push-up bars, and card and chess table access. In short, the institution has "no therapy - no physical therapy, nor any therapy equipment available for Plaintiff[']s use." Doc. 59, p. 5.

According to Norfleet, Lawrence Correctional Center is the only Level 2 facility in the Illinois Department of Corrections that does not comport with the ADA in terms of exercise

---

[1] Norfleet's complaint and his petition for 90-day emergency preliminary injunction both represent verified filings; accordingly, the Court may assume their veracity. *See Jordan v. Turon*, No. 08-cv-210-bbc, 2008 WL 2434114, at *1 (W.D. Wis. June 13, 2008). In drafting this memorandum and order, the Court has also discussed and considered the unverified allegations in Norfleet's other filings to determine whether a hearing on the underlying motions is necessary.

equipment. Both Dixon Correctional Center and Big Muddy River Correctional Center have the sought-after ADA-certified recreation equipment.

Because Norfleet has not been able to properly exercise, his well-being is deteriorating on a daily basis. Most notably, his shoulder is "reaching the point of no return" due a lactic acid issue. Doc. 59, p. 2. This pain affects Norfleet's ability to dress, undress, bathe, and sleep.

Norfleet maintains that Defendants are well-aware that the prison is violating the ADA because he has filed roughly 150 grievances and complaints on the issue over the last three years. These grievances, however, have been consistently rejected. Defendant Ms. Campanella apparently told Norfleet that an inmate needs to only be outside of his cell for one hour per day and that hour need not be purely recreational. Defendant Pamela Moran told Norfleet that the prison is in compliance with any recreation law so long as he can leave his cell to attend chow twice daily. Also, in response to one of Norfleet's many grievances, Moran informed him that "[t]he law only requires that inmates be allowed outside the cell for one hour per day. The law does not require the one hour to be purely recreational." Doc. 61-2, p. 3.

This is not to say that Norfleet's concerns have always fallen on deaf ears. One of the prison's physicians gave Norfleet a "Shoulder Surgery Exercise Guide" that he could follow in his cell as a substitute for traditional physical therapy. *See* Doc. 59-2. Norfleet has also been prescribed Tylenol to alleviate any pain, although the medication is of no avail. Further, Norfleet concedes the prison "informed [him] that the lack of ADA equipment was due to budgetary constraints, but that [he] was welcome to participate in regular recreation periods with his housing unit." Doc. 83, p. 4.

Norfleet prays for five hours of beneficial meaningful exercise per week. He states that

this may be accomplished if Lawrence Correctional Center obtains ADA-certified recreation equipment that can be used five hours per week or if Norfleet can be transferred to Dixon Correctional Center or Big Muddy River Correctional Center for five hours per week. Norfleet also ultimately wants to meet with a physical therapist, although this is not requested in his motion for preliminary injunction.

## ANALYSIS

I.  **Preliminary Injunction Standard**

Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998). A party seeking a preliminary injunction must make a threshold showing that (1) he has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm if the injunction is not granted. *Ferrell v. U.S. Dep't of Housing and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999). The Seventh Circuit Court of Appeals has defined irreparable harm as "harm that cannot be prevented or fully rectified by final judgment after trial[.]" *Roland Mach. Co. v. Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984).

If the moving party is able to establish these three factors, the Court must then balance the harms that an injunction will present to both parties by means of a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. *Ferrell*, 186 F.3d at 811. "[T]he greater the moving party's likelihood of prevailing on the merits, the less strongly it must show that the balance of harms weighs in its favor." *Id*. And, at least with respect to actions proceeding under 42 U.S.C. § 1983, an injunction is not

4

warranted in the absence of an ongoing constitutional violation. *Al-Alamin v. Gramley*, 926 F.2d 680, 688 (7th Cir. 1991).

**II.     Title II of the ADA**

As abovementioned, the underlying claim is brought pursuant to Title II of the ADA, which states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The Supreme Court has held that Title II of the ADA applies to prisons. *Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998). An inmate may sue state officials in their official capacity for prospective injunctive relief under Title II. *Brueggeman ex rel. Brueggeman v. Blagojevich*, 324 F.3d 906, 912 (7th Cir. 2003). In addition, an inmate may bring a private cause of action for damages under Title II if the state actor's conduct violates the Eighth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.") (emphasis in original).

To successfully assert a claim under Title II of the ADA, one must establish the following three elements: "(1) that he . . . has a qualifying disability; (2) that he . . . is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his . . . disability." *Culvahouse v. City of LaPorte*, 679 F. Supp. 2d 931, 937 (N.D. Ind. 2009) (citing *Frame v. City of Arlington*, 575 F.3d 432 435 (5th Cir. 2009)) (quotation marks omitted); *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996). With respect to the

5

second element, a plaintiff "may establish discrimination by presenting evidence that the defendant intentionally acted on the basis of the disability, the defendant refused to provide a reasonable modification, or the defendant's denial of benefits disproportionately impacts disabled people." *Culvahouse*, 679 F. Supp. at 937 (relying upon *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999)); *Flynn v. Doyle*, 672 F. Supp. 2d 858, 878 (E.D. Wis. 2009).

An inmate may be able to establish a Title II failure-to-accommodate claim if he is unable to access the prison's exercise equipment. *See, e.g., Castle v. Knowles*, Case No. CV 1-08-01267-JAT, 2010 WL 2232394, at * 3 (E.D. Cal. June 3, 2010) ("[I]t is clear that the lack of accommodations Plaintiff complains of stem from his personal participation; or, perhaps more accurately, his inability to participate [in meaningful exercise] because of the alleged violations of Title II."); *Thomas v. Pa. Dep't of Corrs.*, 615 F. Supp. 2d 411, 425 (W.D. Pa. 2009) (Magistrate judge recommended summary judgment against inmate's Title II claim because, *inter alia*, he could not demonstrate a continued inability to access exercise equipment and dining facilities).

Upon making out a *prima facie* case of Title II discrimination, "the burden shifts to the defendants to show that the accommodation provided was either effective, or that the accommodation sought and not provided would have resulted in a fundamental alteration of the procedures or an undue financial or administrative burden." *Flynn*, 672 F. Supp. 2d at 878; *Culvahouse*, 679 F. Supp. 2d at 937. 28 C.F.R. § 35.130(b)(7) (2011). This determination is both fact-intensive and context-specific. *Flynn*, 672 F. Supp. 2d at 878.

**III.    Norfleet Is Entitled to a Hearing on His Preliminary Injunction Motions**

Here, at the very least, Norfleet is entitled to a hearing on his motion for preliminary injunction because it appears he can make the requisite threshold showing.

First, Norfleet has demonstrated some likelihood of success on the merits. Defendants do not contest that Norfleet satisfies the first element of a failure-to-accommodate claim, namely that he is disabled for purposes of the ADA. Also, assuming that Norfleet is receiving only one "if lucky" hour of exercise per week with little to no ADA-certified equipment, it cannot be disputed that Norfleet is being denied the benefit of an activity — exercise — for which the Lawrence Correctional Center is responsible. This was what happened in *Castle* and *Thomas*, and it is exceptionally noteworthy in the case at bar when one considers that non-disabled inmates at Lawrence Correctional Center typically enjoy at least five hours of exercise every week. And, at present, it appears that Norfleet's lack of meaningful and beneficial exercise is solely the result of his disability. Of course, this *prima facie* showing merely shifts the burden to Defendants, who may eventually establish that they have effectively accommodated Norfleet or that it would be impractical to do so.[2] Nevertheless, for the time being, it appears that Norfleet could very well succeed on the merits.

---

[2] The R & R emphasizes that the "Lawrence [Correctional Center] staff did create two special recreation periods for physically disabled inmates, [but] these periods were subsequently cancelled due to operational constraints." Doc. 79, p. 3. It also touts the fact that "Lawrence [Correctional Center] staff has also informed Plaintiff that the lack of ADA equipment was due to budgetary constraints[.]" *Id*. Other than the record's vague reference to such operational and budgetary constraints, Defendants have yet to explain the specific rationale behind its cancellation of the special recreation periods. Thus, the Court cannot yet discern whether the rec time truly constituted an undue financial or administrative burden.

Next, Norfleet has established that an inadequate remedy at law and an irreparable injury will result if the Court does not grant an injunction. Again, Norfleet has alleged that his well-being is deteriorating on a daily basis due to a lack of exercise. More specifically, Norfleet has stated that he is suffering from ever-increasing shoulder pain due to a lactic acid issue. Indeed, the mental and physical health concerns Norfleet has presented, including a shoulder that may "reach[] the point of no return," Doc. 59, p. 2, may soon produce an irreparable injury for which there is no adequate remedy at law.

Finally, in applying a sliding scale analysis relative to the considerations discussed *supra*, the Court considers the harm that an injunction or lack thereof will present to the parties and the public. Right now, this analysis is difficult to undertake due to a lack of relevant evidence, especially regarding potential harm to Defendants and the public. While the R & R rightfully raises the concern that inmates should not be able to dictate the conditions of their confinement, prisons should not dictate their level of compliance with the ADA. The Court also notes that it is not persuaded by *Al-Alamin* or *Delaney v. DeTella*, 256 F.3d 679 (7th Cir. 2001) because those cases involved § 1983 claims, not a failure-to-accommodate claim under Title II of the ADA.[3] Further, unlike the *Al-Alamin* Court, it remains to be seen whether there is an ongoing constitutional violation in the case at bar.

## CONCLUSION

For the foregoing reasons, the Court **REJECTS** the R & R (Doc. 79). Further, the Court **RESERVES RULING** on Norfleet's Motion for Preliminary Injunction (Doc. 59) and Petition

---

[3]While Norfleet references the Eighth Amendment once in Count IV (the count at issue) of the operative complaint, the Court construes said count as solely bringing a claim under Title II of the ADA, *not* 42 U.S.C. § 1983 or any other statute. *See* Doc. 11, p. 5-6; Doc. 86, p. 1-2.

for 90-Day Emergency Preliminary Injunction (Doc. 61) until a corresponding hearing is held. With that said, the Court **ORDERS** the parties appear for a hearing on the underlying motions on Wednesday, March 30, at 1:30 p.m.  The Court is making arrangements with Lawrence Correctional Center in order for Norfleet to appear for the hearing via videoconference.  Because this memorandum and order adequately responds to Norfleet's recent Motion for Status Request (Doc. 105), the Court **DENIES** said motion **as moot**.

**IT IS SO ORDERED**
**DATED: March 22, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**