IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARC NORFLEET, | |
| Plaintiff, | |
| v. | Case No. 3:09-cv-00347-JPG-PMF |
| ROGER E. WALKER, JR., et al., | |
| Defendants. | |

MEMORANDUM & ORDER

This matter comes before the Court on Plaintiff Marc Norfleet's Motion for Preliminary Injunction. (Doc. 59). On November 4, 2011, this Court held a hearing to determine the merits of the motion and for the following reasons denies Plaintiff's motion.

I.    Background

Inmate Marc Norfleet is confined to a wheelchair and currently housed in Menard Correctional Center (Menard). When he filed the current complaint (Doc. 1) and motion for preliminary injunction (Doc. 59), he was in Lawrence Correctional Center (Lawrence). Norfleet alleges in his motion that non-disabled inmates receive five to seven hours of exercise and recreation time a week. During this time, they have access to free weights, pull-up bars, basketballs, and card tables. Norfleet states he is not given recreation time regularly but occasionally is given an hour a week. As a result of the denial of exercise, he has had a build-up of lactic acid in his shoulders causing continuous pain and rendering him unable to bathe or dress himself. Norfleet asked this Court to provide him with free weights and at least five days of beneficial and meaningful exercise or to order a transfer to a different facility.

Norfleet's situation has changed, however, since he filed the motion for preliminary injunction (Doc. 59) on July 26, 2010. He is no longer housed at Lawrence but is serving time in segregation at Menard. In segregation, all inmates, including three other inmates in wheelchairs,

1

are given access to a basketball and card tables. The inmates do not have access to exercise equipment such as free weights because of the security rules in segregation. When Norfleet completes his time in segregation, he will be transferred to another facility.

## II.     Standards

A. Preliminary Injunction

Preliminary injunctive relief is designed "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortgage Corp. v. Platinum Fin. Group Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).  A party seeking a preliminary injunction must make a threshold showing that (1) it has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if the injunction is not granted. *Ferrell v. United States Dep't of Housing and Urban Dev.*, 186 F.3d 805, 811 (7th Cir. 1999).  If the moving party is able to establish these three factors, the Court must then balance the harms to both parties using a "sliding scale" analysis, also taking into consideration the effect that granting or denying the injunction will have on the public. "A preliminary injunction is an extraordinary remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Chicago Dist. Council of Carpenters Pension Fund v. K & I Constr., Inc.*, 270 F.3d 1060, 1064 (7th Cir. 2001) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) (per curiam)).

B. Americans With Disabilities Act

To establish a successful claim under the Americans with Disabilities Act (ADA), Norfleet must demonstrate 1.) he is a qualified individual with a disability, 2.) he is being excluded from participation in or being denied the benefits of the services, programs, or activities of a public entity, or is being subjected to discrimination by any such entity, and 3.) the denial or discrimination was because of his disability. 42 U.S.C.A. § 12132 (1990); *Love v. Westville*

*Correctional Cente*r, 103 F.3d 558, 560 (7th Cir.1996). The Supreme Court has interpreted the ADA to apply to correctional centers, including state prisons. *Pa. Dept. of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998) (stating "the plain text of Title II of the ADA unambiguously extends to state prison inmates…"); *see also Bryant v. Madigan,* 84 F.3d 246, 248 (7th Cir. 1996).

   C.  Court Involvement in Prison Management

In determining whether to involve itself in prison security matters, a court must balance the constitutional rights of prisoners against the government's interest in maintaining institutional security using the rational relationship test.  "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  To determine whether a prison regulation, or as in this case, a prison policy not contained in a regulation, is reasonable, a court must consider whether there is a rational connection between the policy and a legitimate purpose used to justify the policy, whether there are alternative means of exercising the particular constitutional right and whether the regulation significantly impacts guards, inmates and prison resources generally. *Turner*, 482 U.S. at 89-90.

The Supreme Court has long recognized that institutional security is a legitimate government interest:

> [M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of . . . convicted prisoners. . . .  Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry.  Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.

*Bell v. Wolfish*, 441 U.S. 520, 547 (1979).  Courts are less likely than prison administrators to possess the expertise necessary to solve the difficult problems inherent in prison administration, which is better left to the legislative and executive branches than the judicial branch. *Id.* at 547-48. "[U]nguided substitution of judicial judgment for that of the expert prison administrators on matters [of security] is inappropriate." *Id.* at 554.

> Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. . . . Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.

*Bell*, 441 U.S. at 547-48 (quoting *Pell*, 417 U.S.817, 827 (1974)).

### III.   Analysis

During the hearing the Court heard testimony from Norfleet that he is denied meaningful and beneficial exercise because he is in a wheelchair and unable to use a basketball or engage in calisthenics. The Court also heard testimony from the Acting Assistant Warden of Programs at Menard Correctional Center who coordinates all of the ADA inmates at the facility to ensure ADA compliance. She testified that Menard's inmates in segregation are denied access to equipment such as free-weights or therapy bands because of security concerns. Menard does not allow this equipment for segregation inmates because it could be used as a weapon to injure another inmate, guard, or one's self.  This is true for all inmates including non-disabled inmates and the three other inmates in wheelchairs who are currently in segregation.

Because Norfleet is provided access to the same equipment as the non-disabled and the other disabled inmates are afforded in segregation, the Court does not find it appropriate to grant a preliminary injunction. This is not to say Norfleet's overall claim, which began when he was

not in segregation and could potentially be unresolved when he leaves segregation, does not pose a violation of the Americans with Disabilities Act. In a preliminary injunction hearing, the Court is only called to examine the current situation and the fact Norfleet is in segregation heavily impacts this Court's decision. The reason Norfleet is currently being denied weights is not because of his disability, as required for a violation of the ADA, but because of the security policy in segregation.

The Court finds it inappropriate given the current facts for it to interfere with the running and management of Menard. Although Norfleet has presented testimony about the harm he is sustaining, he is in segregation for disciplinary reasons and the Court cannot order physical therapy or free weights be given to him when Menard has deemed weights to be a security threat. The Court respects prison administrators must be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547-48 (quoting *Pell*, 417 U.S. at 827). For these reasons, the Court is unable to grant Norfleet's motion for preliminary injunction. (Doc. 59).

IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Norfleet's motion for preliminary injunction. (Doc. 59).

**IT IS SO ORDERED.**
**DATED:** November 16, 2011

s./ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**